## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| Calvin Anthony, ) | |
| ) | Civil Action No. 3:05-CV-1636-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER & OPINION** |
| ) | |
| South Carolina Department of Corrections, ) | |
| Robert Ward, and Charles Sheppard, in their ) | |
| individual capacities, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

On June 9, 2005, Plaintiff Calvin Anthony filed this action against his former employer, South Carolina Department of Corrections ("SCDC"), as well as Robert Ward and Charles Sheppard, Deputy Director and Inspector General of SCDC, respectively, in their individual capacities. Plaintiff alleges that Defendants unlawfully discriminated against him based on his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e)-2(a), and that Ward and Sheppard also engaged in a civil conspiracy to cause Plaintiff harm. Amended Complaint, 1-6 (Entry 6). Defendants moved for summary judgment on April 28, 2006. Motion for Summary Judgment (Entry 19). After having been granted an extension of time to respond, Plaintiff filed a response in opposition to Defendants' motion for summary judgment on June 16, 2006. Plaintiff's Memorandum in Opposition (Entry 26). Defendants filed a reply memorandum on June 26, 2006. Reply to Plaintiff's Memorandum in Opposition (Entry 43).

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for pretrial handling. On February 2, 2007, the Magistrate Judge filed a Report and Recommendation in which he recommended that Defendant's

motion for summary judgment be granted in part and denied in part. Report and Recommendation, 22 (Entry 46). Plaintiff filed objections to the Report on February 21, 2007. Plaintiff's Objections to Report and Recommendations (Entry 21). Defendant SCDC filed its objections on February 22, 2007. SCDC's Objections to Report and Recommendation (Entry 52). Plaintiff filed a response to Defendant's objections on December 21, 2006. Reply to Objections (Entry 28).

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## I. FACTS

The facts of this case are detailed at length in the Report and Recommendation of the Magistrate Judge. Report and Recommendation, 1-7. In short, Plaintiff, an African-American man, is a former Warden of Lee Correctional Institution ("LCI"), a facility in SCDC's prison system. Plaintiff worked for SCDC for twenty-four years and had routinely received excellent evaluations from his supervisors. Plaintiff's Deposition Day Two, 18-19. In 2002, Plaintiff came under the supervision of Robert Ward, Deputy Director of SCDC. Id. at 9-10. According to Plaintiff, Ward and Sheppard, both of whom are white, exhibited bias in favor of SCDC's white wardens.[1]

---

[1] See, e.g., Plaintiff's Deposition Day One, 44 (Plaintiff was not placed on any institution management committees or tasks forces); id. at 51-53 (Ward visited LCI less frequently that he visited institutions run by white wardens); id. at 56-57

2

In July 2003, Plaintiff elected to participate in the Teacher and Employee ("TERI") Program, a state retirement incentive program that allows an employee to retire and receive retirement benefits and to later be reinstated to the same position and also receive a percentage of his or her salary. Plaintiff's Deposition Day One, 88-90. Ward initially encouraged Plaintiff to participate in the program. Id. at 89. On April 30, 2004, Plaintiff signed a TERI Program form indicating that he wished to retire effective June 30, 2004 and be rehired under the program. SCDC Retiree Temporary Employment Form, 1.

On January 29, 2004, Sheppard ordered a shakedown of LCI based on a report that Maintenance Supervisor James Goff[2] was inappropriately giving inmates access to the cafeteria pantry and allowing them to smoke marijuana while working in the boiler room. Affidavit of Karen Hair, 2 (Entry 19-9). Although it is routine practice to give a warden advance notice that a shakedown is going to occur, Plaintiff was not notified.[3] Plaintiff's Deposition Day One, 25-27. The shakedown was conducted by an investigator from the Office of Inspector General and agents from South Carolina Law Enforcement Division ("SLED"). SCDC Investigative Activity Report, 7 (Entry

---

(Sheppard unnecessarily criticized LCI and gave unwarranted praise to facilities with white wardens); Plaintiff's Memorandum in Opposition, 2 (Ward failed to annually evaluate Plaintiff during the two years Plaintiff served under Ward).

[2] Goff is responsible for the boiler room, and he was supervised by Tom Morrow, Maintenance Director. Plaintiff's Memorandum in Opposition, 5. Morrow's Supervisor was Major John Brooks. Id. Brooks was supervised by Associate Warden Henry Pridgen, who reported to Plaintiff. Id.

[3] Ward states that Plaintiff was not advised of the shakedown because Pridgen was suspected of wrongdoing and Pridgen's close relationship with Plaintiff might have caused "word [to] get back to the individual in the boiler room"; nevertheless, Ward is unable to recall any prior occasion in which Plaintiff gave Pridgen confidential information. Ward Deposition, 74-77.

3

19-9). The investigators found unsupervised inmates in the boiler room in possession of keys to secured areas, unauthorized computer equipment, and cafeteria food. Affidavit of Karen Hair, 2-3. No drugs or weapons were found in the boiler room.[4]

After the shakedown and subsequent investigation, Ward charged Plaintiff with gross negligence and falsification of official inspection reports on June 16, 2004. Affidavit of John Near, 3 (Entry 19-11). Ward alleged that Plaintiff misrepresented the extent of his own boiler room inspections. Ward Deposition, 180-81. Plaintiff avers that the first he learned of any investigation after the shakedown was when he received notice of Ward's charges against him. Plaintiff's employee review meeting to discuss the charges with Ward was held on June 22, 2004. Ward Deposition, 179. Plaintiff states that Ward informed him that SCDC would not rehire him under the TERI Program after his retirement and that, if Plaintiff did not retire, Ward would terminate his employment. Plaintiff's Deposition Day One, 126. Plaintiff gave notice of his retirement on June 23, 2004. Ward Deposition, 176.

Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") on August 30, 2004. After receiving a right to sue letter, Plaintiff filed this action, alleging that Defendants discriminated against him on the basis of his race and retaliated against him for opposing SCDC's racially discriminatory policies. Amended Complaint, 3-5. Plaintiff also raised a state law civil conspiracy claim against Ward and Sheppard. Id. at 5-6. The Magistrate Judge recommended that the court grant summary judgment as to Plaintiff's claims for retaliation and civil conspiracy, finding that Plaintiff had failed to raise the retaliation charge in his SCHAC

---

[4] During a search of the rest of the facility, investigators found weapons, drugs, and alcohol in the residential area. Ward Deposition, 70-73. According to Ward, finding such material in a prison is not an unusual occurrence. Id.

4

charge and had not sufficiently proven that Ward and Sheppard ever conspired against him.[5] Report and Recommendation, 17-21. The Magistrate Judge also recommended that the court deny summary judgment with respect to Plaintiff's claim for racial discrimination, finding that Plaintiff had established a prima facie case of discrimination under Title VII. Id. at 1-17.

## II.  DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Nonetheless, in deciding a motion for summary judgment, "the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. Summary judgment should only be granted in those cases where it is perfectly clear that there remains no genuine dispute as to material fact and inquiry into the facts is unnecessary to clarify the application of the law. McKinney v. Bd. of Trustees of Mayland Cmty.

---

[5]  Plaintiff did not object to the Magistrate Judge's recommendation that summary judgment be granted as to his retaliation claim. In the absence of objections to the Report and Recommendation of the Magistrate Judge, this court is not required to give any explanation for adopting the recommendation. Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). The court has thoroughly reviewed the Report and concurs in the Magistrate Judge's finding that summary judgment should be granted with respect to the retaliation claim.

College, 955 F.2d 924, 928 (4th Cir. 1992).

A.  **Race Discrimination Claim**

Plaintiff alleges race discrimination under Title VII. Title VII prohibits an employer from discharging an individual because of his race, gender, or national origin. 42 U.S.C. § 2000e-2(a). In order to prevail in a discrimination claim, a plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998). Once a plaintiff makes out a prima facie case of discrimination, an inference of impermissible discrimination is established, and the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the plaintiff's termination. McDonnell Douglas, 411 U.S. at 802. If the defendant articulates such a reason, the plaintiff bears the ultimate burden of persuasion and must show, by a preponderance of the evidence, that the defendant's proffered reason for the dismissal is pretextual. Id. at 804.

1.  **Prima Facie Case**

SCDC contends that the Magistrate Judge incorrectly found that Plaintiff established a prima facie case for discrimination. SCDC's Objections to Report and Recommendation, 2, 14-24. Specifically, Defendant states that the "Magistrate Judge erred in finding and concluding that similarly situated employees outside the Plaintiff's class received more favorable treatment." Id. at 2. The court disagrees.

Generally, the prima facie case for a discrimination claim under Title VII requires a plaintiff to show that: (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly

qualified applicants outside the protected class. Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). However, these elements may vary depending on what type of discrimination a plaintiff alleges. See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) (stating that the precise elements of a prima facie case are flexible and depend on the factual situation and claim alleged).

To establish a prima facie case of race discrimination in cases involving the enforcement of employee disciplinary measures, the four-prong prima facie model set forth in Hill is "less useful." Moore v. Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985). In the disciplinary context, a plaintiff must demonstrate that: (1) he is a member of a protected class, (2) he "engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin," and (3) "disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." Id. The "relevant comparison should not center around similarly situated employees, rather, the court should compare offenses which are comparable in seriousness to the plaintiff's misconduct." Burwell v. Philip Morris, 1994 U.S. App. LEXIS 35247, *7-8 (4th Cir. Dec. 15, 1994). Accordingly, "the focus is on similar offenses, not similar employees." Id. Such a "comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same set of circumstances," Cook v. CSX Transp. Corp., 922 F.2d 507, 511 (4th Cir. 1993); thus, exact sameness between a plaintiff and the other person is not necessary. See Harrison v. Metro. Gov't of Nashville & Davidson County, 80 F.3d 1107, 1115 (6th Cir. 1996) ("[I]n comparing employment discipline decisions, 'precise equivalence in culpability between employees' is not required. Rather, the plaintiff must simply show that the employees were

engaged in misconduct of 'comparable seriousness.'" (quoting McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 n.11 (1976) (internal quotations omitted)).

Plaintiff has provided sufficient evidence to establish a prima facie case of discrimination under Moore. It is undisputed that he is a member of a protected class. Viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could find that Plaintiff committed violations similar to those of SCDC employees of another race, but was subject to harsher disciplinary action. Plaintiff has provided various examples of white wardens within SCDC who experienced problems at their institutions similar to those at LCI, but were not terminated from their employment as Plaintiff was. See, e.g., Plaintiff's Deposition Day One, 130 (George Hagan, white warden at Allendale Correctional Institution, was not disciplined after a 2004 shakedown of his facility revealed that inmates had access to computers and smuggled firearms, which were used to shoot two inmates); id. at 122-23 (Rick Smith, white warden at Tyger River Correctional Institution, was not disciplined and was allowed to participate in the TERI Program after inmates were discovered using scrap materials to build a secret hideaway recreation space).

Just as the LCI shakedown revealed inmates with access to unauthorized areas and in possession of contraband, similar investigations at both the Allendale and Tyger River prisons revealed almost identical deficiencies; however, the wardens of those facilities were not punished in contrast to Plaintiff, who was forced to retire early and not allowed to participate in the TERI Program. The record also indicates that Ward made both decisions. Ward Deposition, 189-90 (stating that Ward did not include any report of the Allendale incident in Hagan's file, nor did he take any action against Smith). See Smith v. Xerox Corp., 196 F.3d 358, 370-71 (2d Cir. 1999) ("Because intent is the critical issue, only a comparison between persons evaluated by the same

decisionmaker is probative of discrimination."). Plaintiff's alleged violation of SCDC policy was, at minimum, comparable in seriousness to the misconduct by white wardens, yet the disciplinary action enforced against him was more severe. For purposes of summary judgment, the Magistrate Judge properly found that the evidence is sufficient to create a question of fact as to whether Plaintiff's misconduct was comparably serious (and, in some cases, more serious, see Report and Recommendation, 12-14) to that of white wardens supervised by Ward who were treated more leniently. Accordingly, Defendant's objection is without merit.[6]

### 2.     Non-Disciplinary Disparate Treatment Claims[7]

SCDC asserts that the Magistrate Judge improperly concluded that SCDC conceded that Plaintiff could establish the first three prongs of the prima facie test as set forth in Hill. SCDC's Objections to the Report and Recommendation, 24-26. SCDC states that "[a]lthough [SCDC's] motion for summary judgment did rely upon the cited case of Moore . . . [SCDC] did not concede the issues covered by the first three prongs of the typical prima facie case analysis." Id. Again, the

---

[6]     SCDC's assertion that "Plaintiff must point to the employer's own classification of disciplinary offenses in its assessments of comparable seriousness" is unfounded. SCDC's Objections to Report and Recommendation, 15-16. SCDC incorrectly relies on Moore in support of that proposition. In Moore, the Fourth Circuit stated that the "district court [which had conducted a bench trial] ignored the department's own classification of disciplinary offenses in its assessments of comparable seriousness." Moore, 754 F.2d at 1106. At no point in the opinion does the court require all plaintiffs to cite to a specific classification of a disciplinary offense, nor does the opinion indicate that the court should require any such proof at the summary judgment stage.

[7]     Insofar as SCDC objects to the Magistrate Judge's finding that Plaintiff had sufficiently proven that his forced retirement constituted an adverse employment action for Plaintiff's constructive discharge claim, the objection is moot. See Plaintiff's Memorandum in Opposition, 8 n.4 (stating that "[n]o such claim [for constructive discharge] is made and any arguments relating thereto are misplaced").

court disagrees.

Plaintiff's complaint lists various incidents which Plaintiff avers constitute race discrimination. Amended Complaint, 3-4. Aside from Plaintiff's claims arising out of the 2004 shakedown and subsequent investigation, many of Plaintiff's claims addressed other ways in which Defendants discriminated against him during his employment with SCDC. See id. at 3 ("Ward became Plaintiff's supervisor and began to subject the plaintiff to disparate terms and conditions of employment"); id. ("Ward and Sheppard . . . exhibited racial animus toward the plaintiff by deliberately bypassing him to talk and interact with lower level white personnel at the facility"). Plaintiff did not limit his complaint to incidents surrounding the shakedown; rather, he specifically stated that "the above actions constitute unlawful race discrimination." Id. at 4.

Defendants did not address Plaintiff's non-disciplinary disparate treatment claims in their motion for summary judgment; nor did Defendants set forth or analyze those claims under the elements as set forth in Hill. While SCDC states that it "clearly argued in the motion for summary judgment, the memorandum, and the reply that evidence did not support any argument that . . . Plaintiff had met the burden setting forth a prima facie case," id., Defendants' own pleadings belie this assertion. See Memorandum in Support for Motion for Summary Judgment, 21-24 (Entry 19-2) (discussing only the prima facie case as set forth in Moore); id. at 24-25 (explaining the pretext standard in the context of disciplinary actions); Reply to Plaintiff's Memorandum in Opposition, 2 ("focus[ing] on clarifying [unsupported or incorrect] allegations [made by Plaintiff in his memorandum in opposition]"); id. at 12 (concluding that "Plaintiff has not established a prima facie case of racial discrimination or retaliation because he has not rebutted [SCDC's] that a nondiscriminatory reason motivated Mr. Ward's decision to discipline Mr. Anthony and give him

the option of retiring or being terminated."). These pleadings indicate that Defendants failed to move for summary judgment on Plaintiff's non-disciplinary disparate treatment claims. As such, Defendant's objection is without merit.[8]

**3.    Pretext**

SCDC objects to the Magistrate Judge's conclusion that Plaintiff established pretext as to SCDC's legitimate, non-discriminatory reasons for terminating Plaintiff's employment. SCDC's Objections to Report and Recommendation, 2. However, SCDC does not raise any specific objection to the Magistrate Judge's findings; rather, SCDC simply restates arguments made in its motion for summary judgment. Compare, e.g., id. at 8-14 (describing shakedown on January 29, 2004, the subsequent investigation, the corrective action taken against Plaintiff) with Memorandum in Support of Motion for Summary Judgment, 3-14, 15-17 (same). Even if the court construed these statements as objections to the Report, at most, they would constitute the type of general and conclusory objections that do not warrant the court's response. See Orpiano v. Johnson, 687 F.2d

---

[8]    Even if the court did consider SCDC's argument that Plaintiff has not established a prima facie case under McDonnell Douglas, SCDC's argument would fail. SCDC argues that, to establish pretext, a plaintiff must show that the employer's decision was motivated by retaliatory animus. Id. at 24-25 (citing Reeves v. Sanderson Plumbing Prods., Inc., 197 F.3d 688 (5th Cir. 1999), overruled by 530 U.S. 133 (2000)). Under current Title VII jurisprudence, a plaintiff is no longer required to show discriminatory animus to satisfy his burden of proving pretext. See Reeves, 530 U.S. at 147 (stating that a plaintiff may show pretext by either: (1) persuading the court that a discriminatory reason more likely motivated the employer, or (2) showing that the employer's proffered explanation is unworthy of credence since, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."). Accordingly, SCDC assertion that the facts "relied on by the Magistrate Judge for an inference of racial bias or animus are not supported by the record" is without merit. SCDC Objections to the Report and Recommendation, 26.

11

44, 47-48 (4th Cir. 1982) (when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed finding and recommendations, the court need not conduct a de novo review).

**B.    Civil Conspiracy**

Plaintiff objects to the Magistrate Judge's recommendation that the court grant summary judgment as to his civil conspiracy claim against Defendants Ward and Sheppard in their individual capacities. Plaintiff's Objections to the Report and Recommendations, 1. Plaintiff argues that the "record is replete with facts, as well as inferences to show that the individual defendants conspired to bring about [Plaintiff's] forced retirement." Id. The court finds that Plaintiff has alleged a civil conspiracy claim against Ward and Sheppard sufficient to survive summary judgment.

The tort of civil conspiracy contains three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) causing plaintiff special damage. Kuznik v. Bees Ferry Assoc., 538 S.E.2d 15, 31 (S.C. Ct. App. 2000). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than re-allege other claims." Robinson v. Metts, 86 F. Supp. 2d 557, 563 (D.S.C. 1997) (citing Todd v. S.C. Farm Bureau Mut. Ins. Co., 278 S.E.2d 607 (S.C. 1981)). Such a claim may exist "even though respondents committed no unlawful act and no unlawful means were used." LaMotte v. Punch Line of Columbia, Inc., 370 S.E.2d 711, 713 (S.C. 1988). To be actionable, "overt acts pursuant to the common design proximately cause damage to the party bringing the action." Future Group, II v. Nationasbank, 478 S.E.2d 45, 51 (S.C. 1996).

A plaintiff may bring a civil conspiracy cause of action against the employees of a corporation in their individual capacities. Lee v. Chesterfield Gen. Hosp., Inc., 344 S.E.2d 379, 383

(S.C. 1986). It is clear from the face of the complaint that Plaintiff has specifically sued Ward and Sheppard "in their individual capacities" rather than in their official capacities. Amended Complaint, 1. In essence, Plaintiff alleges that Ward and Sheppard conspired against him to do a surprise shakedown and subsequent investigation, which Plaintiff was not aware of until he received notice of the charges that resulted from the investigation. Plaintiff has further alleged that Ward's and Sheppard's actions were motivated by Plaintiff's refusal to assist Ward and Sheppard in misrepresenting the conduct of another SCDC official, Laurie Bessinger, in a report concerning a riot that took place at LCI. Plaintiff's Deposition Day Two, 86.[9]

The record also indicates that Ward and Sheppard met on different occasions with regard to the shakedown, see, e.g., Ward Deposition, 90-93 (discussing conversations between Ward and Sheppard about the logistics of the shakedown operation); and Plaintiff's participation in the TERI Program, see e.g., Bessinger Deposition, 17 ("Mr. Ward . . . had given [Plaintiff] reason to believe that he was going to support him in the rehire program. Mr. Sheppard sabotaged . . . that with Mr. Ward because then Mr. Ward changed his mind on that, and the only reason I could think of would be that Mr. Sheppard . . . pretty much convinced Mr. Ward that he shouldn't be in favor of it."). See LaMotte, 370 S.E.2d 711, 713 n.1 (considering that the defendants "held meetings and circulated correspondence allegedly containing misrepresentations" about plaintiffs in finding that defendants were not entitled to granting summary judgment to defendants). The unusual circumstances surrounding the shakedown and Ward's refusal to allow Plaintiff's participation in the TERI Program raise genuine issues of material facts as to whether a civil conspiracy to injure Plaintiff

---

[9] According to Plaintiff, Ward requested that Plaintiff put false information about Bessinger's handling of the riot into a report and to make false allegations during a grievance proceeding against Bessinger. Id. at 86-87.

13

existed between Ward and Sheppard.

Plaintiff's disputed status as an at-will employee does not change this finding. Even assuming that Plaintiff's employment was terminable at the will of SCDC, Defendants' assertion that "an at-will employee is precluded from maintaining an action for civil conspiracy to terminate his employment" is unpersuasive. Memorandum in Support of Motion for Summary Judgment, 33. It is well-settled in South Carolina that at-will employees may not sustain actions for civil conspiracy against their employers. See Angus v. Burroughs & Chapin Co., 628 S.E.2d 261, 262 (S.C. 2006) ("[A]n at-will employee may not maintain a civil conspiracy action against her employer." (citing Ross v. Life Ins. Co. of Va., 259 S.E.2d 814, 815 (S.C. 1979)). In the instant case, however, Plaintiff has not raised a civil conspiracy claim against SCDC. Thus, his status as an at-will employee does not bar his claim for civil conspiracy against Ward and Sheppard. See Lee, 344 S.E.2d at 383 ("[A]gents of a corporation are legally capable, as individuals, of conspiracy among themselves of with third parties."). Accordingly, Defendants are not entitled to summary judgment as to Plaintiff's civil conspiracy claim.

### III. CONCLUSION

The court has accepted all of Plaintiff's factual allegations as true. After thoroughly reviewing the Report and Recommendation in its entirety and the evidence in this case and after examining the applicable case law, the court **denies** Defendants' motion for summary judgment as to Plaintiff's civil conspiracy claim, and the court declines to adopt the Magistrate Judge's recommendation with respect to that claim. The court adopts the remainder of the Report and Recommendation of the Magistrate Judge and **denies** the motion for summary as to Plaintiff's race

discrimination claim and **grants** the motion as to Plaintiff's retaliation claim.

      **IT IS SO ORDERED.**

      /s/ Margaret B. Seymour
      Margaret B. Seymour
      United States District Judge

Columbia, South Carolina
March 30, 2007